# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN BUSH, | ) 1:09-cv-1551 SKO |
| | ) |
| | ) **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, | ) **SOCIAL SECURITY COMPLAINT** |
| | ) |
| v. | ) (Doc. 2) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |
|_____| ) |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. 42 U.S.C. § 405(g). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 9, 10.) On April 8, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1960 and completed the eleventh grade. (Administrative Record ("AR") 973-74.) Plaintiff previously worked as a sheet metal worker. (AR 976.) He stopped working on June 11, 2002, after falling from a ladder at work. (AR 975-76.) On November 26, 2002, Plaintiff filed an application for DIB, alleging disability beginning on June 11, 2002, due to depression and anxiety, dizziness, and pain in his left shoulder, neck, and low back. (AR 24, 111-13.)

**A.   Medical Evidence**

**1.   Carol L. Lewis-Wintrode, Ph.D.**

On August 28, 2002, Dr. Lewis-Wintrode, a licensed psychologist, performed a consultative examination of Plaintiff. Dr. Lewis-Wintrode determined that Plaintiff could perform simple and repetitive work activity, but that Plaintiff would have considerable difficulty maintaining his pace and some mild difficulty with maintaining his attention and concentration. (AR 29, 298-304.)

**2.   Ida M. Hilliard, M.D.**

On September 16, 2003, a state agency psychiatrist, Ida M. Hilliard, M.D., completed a psychiatric review technique form in which she opined that, because of his anxiety, Plaintiff had (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) had one or two episodes of decompensation. (AR 480-81.)

In assessing Plaintiff's mental residual functional capacity ("RFC"),[2] Dr. Hilliard also opined that Plaintiff was moderately limited in his ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary

---

[2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

tolerances; (4) sustain an ordinary routine without special supervision; and (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.  (AR 469-70.)

### 3.   Steven I. Subotnick, D.P.M., N.D., D.C.

As part of Plaintiff's worker's compensation claim, Dr. Subotnick, a podiatrist and chiropractor, opined that Plaintiff had reached a "permanent and stationary status" as of September 25, 2003, and was "totally disabled and unable to compete in any way on the open labor market" because of pain and loss of spinal motion.  (AR 542, 548-49.)

### 4.   Eric S. Morgenthaler, Ph.D.

On August 3, 2004, Dr. Morgenthaler, a licensed psychologist, performed psychological testing on Plaintiff to determine Plaintiff's personality profile.  (AR 700-03.)  Plaintiff's results on the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2") revealed that Plaintiff "is likely exaggerating the extent of his current difficulties as he is reporting so many symptoms of acute, severe and unusual distress."  (AR 701.)  Plaintiff's "MMPI-2 profile is of questionable validity due to the high probability of symptom exaggeration."  (AR 701.)  Plaintiff "is prone to convert and displace feelings of emotional distress into somatic representations.  Accordingly, there is a high probability that a significant psychological component underlies many of his current physical complaints."  (AR 701.)  Dr. Morgenthaler concluded that "the MMPI-2 data revealed signs of somatoform, depressive and anxiety disorders, within the context of likely exaggeration. In addition, the MMPI-2 revealed signs of histrionic and dependent personality dynamics."  (AR 702.)

### 5.   Richard Baker, M.D.

On September 20, 2004, Dr. Baker, an agreed orthopedist and specialist in occupational illness and injury, examined Plaintiff in connection with his worker's compensation claim. (AR 955-66.)  Plaintiff exhibited multiple factors indicating that he was exaggerating his symptoms and limitations, as Dr. Baker believed that there was a "relatively significant psychosocial component to [Plaintiff's] presentation."  (AR 28, 964).  "Waddell's test is positive in four of five categories,

consistent with a nonphysiologic element to the presentation." (AR 965.) On direct examination, Plaintiff exhibited a substantially reduced range of motion in his neck. (AR 28, 964.) On indirect observation, however, Plaintiff's range of motion in his neck was "significantly greater." (AR 964.)

Dr. Baker opined that Plaintiff experienced (1) spinal permanent disability described by a preclusion from heavy lifting, repeated bending and stooping; (2) left shoulder disability described by a preclusion from overhead work; (3) right upper extremity permanent disability described by a preclusion from repetitive, forceful grasping; and (4) headache disability described by slight to moderate headaches. (AR 965.) Plaintiff was, therefore, not able to return to work as a sheet metal worker. (AR 965.) Dr. Baker believed, however, that Plaintiff was not permanently and totally disabled from an orthopedic standpoint, but was able to participate in vocational rehabilitation. (AR 965.)

**6.    Robert C. Larsen. M.D., M.P.H.**

On October 6, 2004, Dr. Larsen, a psychiatrist, examined Plaintiff in connection with Plaintiff's worker's compensation claim as an agreed medical examiner. Dr. Larsen noted the prior objective test results indicating Plaintiff was likely exaggerating his symptoms and concluded that Plaintiff may have opted to pursue obtaining Social Security disability benefits rather than genuinely wanting to improve and return to the workforce. (AR 28, 557-61.) Dr. Larsen opined that Plaintiff's mental condition should have stabilized as his physical condition had achieved maximum recovery as of September 25, 2003. (AR 34, 542, 558, 964.) "Given that the primary orthopedic condition is deemed to have stabilized[,] so too should the associated mood disorder." (AR 558.)

Dr. Larsen's evaluation of Plaintiff's work functions was as follows:

•      Plaintiff's level of impairment in his ability to comprehend and follow instructions was "minimal." (AR 561.)

•      Plaintiff's level of impairment in his ability to perform simple and repetitive tasks was "minimal." (AR 561.)

•      Plaintiff's level of impairment in his ability to maintain a work pace appropriate to a given work load was "slight." (AR 561.)

- Plaintiff's level of impairment in his ability to perform complex or varied tasks was "slight." (AR 561.)

- Plaintiff's level of impairment in his ability to relate to other people beyond giving and receiving instructions was "slight." (AR 561.)

- Plaintiff's level of impairment in his ability to influence people was "slight." (AR 561.)

- Plaintiff's level of impairment in his ability to make generalizations, evaluations, or decisions without immediate supervision was "slight to moderate." (AR 561.)

- Plaintiff's level of impairment in his ability to accept and carry out responsibility for direction, control, and planning was "slight to moderate." (AR 561.)

**7.    Michael Musacco, Ph.D.**

On May 19, 2005, Dr. Musacco performed a psychological consultative examination of Plaintiff. Plaintiff reported that he had suffered from a spinal cord injury occurring at work that required him to use a wheelchair. (AR 808.) Dr. Musacco opined on the basis of Plaintiff's self-reporting that Plaintiff had substantial impairment in his activities of daily living, social activities, and his ability to maintain his attention and concentration. (AR 33, 810-11.) Dr. Musacco diagnosed Plaintiff with depressive disorder, not otherwise specified, "to account for [Plaintiff's] self-report of a variety of symptoms of depression including feelings of worthlessness, hopelessness, and irritability. [Plaintiff] indicated that his symptoms of depression have been ongoing over the course of several years, resulting from his medical condition." (AR 811.) Dr. Muscacco also diagnosed Plaintiff with panic disorder "to account for [Plaintiff's] self-report of panic attacks." (AR 811.)

**B.    Lay Witness Evidence**

**1.    Tina Bush**

On January 25, 2005, Plaintiff's wife, Tina, completed a work history report on behalf of her husband stating that Plaintiff was "still having a lot of problems" with blackout spells four to five times a month. (AR 213.)

On April 22, 2005, Ms. Bush also completed a pain questionnaire on behalf of Plaintiff. (AR 237-49A.)  Ms. Bush stated that Plaintiff could walk, stand, and sit in ten-minute intervals. (AR 244.)  Plaintiff's self-reported pain was located in his back, head, neck, left ear, left shoulder, right forearm, right leg, right thigh, and hips.  Plaintiff's "whole entire body hurts constantly."  (AR 238.)

Ms. Bush further stated that she drove Plaintiff and did the household errands, as Plaintiff was unable to do any chores.  (AR 244.)

### 2.    Rebecca Gray

On April 22, 2005, Rebecca Gray, Plaintiff's prospective daughter-in-law, completed a third-party function report describing how Plaintiff's illnesses, injuries, or conditions limited his activities. (AR 257-65.)  Ms. Gray stated that she lived with Plaintiff and helped him with his daily needs. (AR 257.)  Plaintiff was "in and out of bed all day" and watched television. (AR 257.)  Plaintiff needed assistance with getting dressed, washing his legs and feet, shaving, and using the toilet.  (AR 258.)

According to Ms. Gray, Plaintiff needed to be pushed in his wheelchair.  (AR 260.) Plaintiff's driver's license was revoked because of his blackouts.  (AR 260.)  Plaintiff could not read or understand bill statements or write a check.  (AR 260.)  Plaintiff argued with his family and suffered from mood swings.  (AR 261.)

## C.    Administrative Proceedings

The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 66-67, 85-95.)

On November 9, 2004, ALJ Richard L. Leopold held a hearing and issued a decision on January 10, 2005, finding Plaintiff not disabled.  (AR 68-80.)  The Appeals Council granted Plaintiff's request for review of the ALJ's decision and remanded the case to the ALJ on April 8, 2005, for an ALJ to evaluate properly Plaintiff's mental impairments and to address the opinion of the state agency non-examining consultant.  (AR 81-84, 100-01.)

On May 17, 2006, upon remand from the Appeals Council, ALJ Patricia Flierl held a hearing where Plaintiff and a vocational expert ("VE") testified. (AR 970-1001.)

### 1. Plaintiff's Testimony

Plaintiff testified that he could not carry any weight. (AR 985.) He needed assistance in dressing and cleaning himself, as he could not shower, bathe, or go to the bathroom by himself. (AR 985.) Plaintiff did not have any social life. (AR 985.) Because he could not get out of bed, he did not exercise. (AR 985.) His driver's license was revoked three years before the hearing. (AR 975.)

Because of his depression, Plaintiff had lost interest in things, testifying that he did not "even want to live anymore" and had contemplated suicide. (AR 986.) Plaintiff had trouble with his concentration and memory, and experienced paranoia and crying spells. (AR 986.) He also experienced panic attacks and blackouts. (AR 978.)

### 2. Vocational Expert's Testimony

The VE testified that Plaintiff's past job as a metal fabricator was skilled and heavy.[3] (AR 991.) A hypothetical person of Plaintiff's age, education, and work experience could not perform Plaintiff's past relevant work if that person could only perform light work[4] limited to simple, repetitive tasks with no overhead work with the left arm, only occasional grasping with the left arm, and no exposure to hazardous machinery or heights. (AR 994.) Such a person could, however, perform the unskilled jobs of hand packager and assembler. (AR 995.) Such a person could not perform any work if that person had poor ability to maintain attention, concentration, and appropriate work pace. (AR 995.)

### D. ALJ's Decision on Remand

On March 29, 2007, the ALJ issued a partially favorable decision finding Plaintiff disabled from June 11, 2002, through September 25, 2003, but not thereafter. (AR 17-38.) The ALJ found

---

[3] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 404.1567(d).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

that, from June 11, 2002, through September 25, 2003, Plaintiff had the RFC to perform only a range

of light work that was simple and repetitive in nature and that precluded (1) lifting and carrying more

than 20 pounds occasionally or 10 pounds frequently; (2) standing, walking, or sitting for more than

about six hours in an eight-hour workday; (3) all overhead work with the left arm; (4) more than

occasional, forceful grasping with the right arm. (AR 26-27.)  However, Plaintiff was precluded

from doing this work because during this period Plaintiff was additionally required to sit and rest for

a period of 10 minutes after standing or walking for more than 45 to 60 minutes in duration.  (AR

27.) Plaintiff also had a poor ability to maintain attention, concentration, and appropriate work pace.

(AR 27.)   Accordingly, Plaintiff could not perform his past relevant work or any other jobs in

significant numbers in the national economy from June 11, 2002, through September 25, 2003, and

was, therefore, disabled.  (AR 29-31.)

In so finding, the ALJ found that Dr. Hilliard's opinion was generally consistent with the

opinion of Dr. Lewis-Wintrode for the period prior to September 26, 2003.  (AR 29.)  The ALJ

rejected Dr. Subotnick's opinion that Plaintiff was "totally disabled" because his opinion was not

from an acceptable medical source.  (AR 31.)  The ALJ found as follows:

> Dr. Subotnick's medical specialties are podiatry, chiropractic care and naturopathic
> care.   Though his opinion may be acceptable under California's worker's
> compensation law and regulations, under federal Social Security law and regulations
> his opinion would be acceptable if it was limited to [Plaintiff's] feet, but not when
> he provides an opinion about [Plaintiff's] spine and other physical impairments.

(AR 31.)

The ALJ further found that Plaintiff's nonexertional limitations improved beginning on

September 26, 2003, so that Plaintiff had the RFC to perform a range of light work that was simple

and repetitive in nature and that precluded (1) lifting and carrying more than 20 pounds occasionally

or 10 pounds frequently; (2) standing, walking, or sitting for more than about six hours in an eight-

hour workday; (3) all overhead work with the left arm; (4) more than occasional, forceful grasping

with the right arm.  (AR 34-35.)  The ALJ found that, since September 26, 2003, Plaintiff had

(1) mild restriction of activities of daily living; (2) mild to moderate difficulties in maintaining social

8

1  functioning; (3) mild difficulties in maintaining concentration, persistence, or pace; and (4) no

2  repeated episodes of decompensation, each of extended duration.  (AR 34.)

3        The ALJ noted that, as the agreed psychiatric medical examiner in Plaintiff's worker's

4  compensation case, Dr. Larsen had determined that Plaintiff's mental condition had achieved

5  maximum recovery.  (AR 31, 558.)  Accordingly, although Plaintiff could still not perform his past

6  relevant work as of September 26, 2003, Plaintiff could at that point perform work as a hand

7  packager or assembler, jobs which existed in significant numbers in the national economy.  (AR 35-

8  36.)

9        As for Plaintiff's credibility, the ALJ found that Plaintiff was "utterly without any credibility

10  at all.  His testimony and allegations about his symptoms and limitations are wholly unreliable and

11  are given no evidentiary weight in assessing his residual functional capacity."  (AR 28.)

12  "Additionally, the opinion of any medical source that relied heavily upon [Plaintiff's] subjective

13  statements about his limitations is infected with [Plaintiff's] lack of credibility and cannot be relied

14  upon to provide an acceptable objective medical opinion about [Plaintiff's] limitations resulting from

15  his impairments."  (AR 28.)

16        In this regard, the ALJ found that the opinion of Dr. Musacco, the psychological consultative

17  examiner, was entitled to "little evidentiary weight" because Dr. Musacco "admitted that most of the

18  opinions were based upon [Plaintiff's] self-reported symptoms and limitations."  (AR 33.)  The ALJ

19  found that Dr. Musacco's opinion "is tainted by [Plaintiff's] lack of credibility."  (AR 33.)

20        The ALJ also found that, in light of Dr. Larsen's opinion that Plaintiff had only a slight

21  impairment of his ability (1) to maintain his work pace or to perform complex work activity and

22  (2) to maintain interpersonal relations with others, "a limitation to simple and repetitive tasks is

23  supported by the record in evidence."  (AR 34.)

24        Plaintiff sought review of this decision before the Appeals Council, which denied review on

25  July 2, 2009.  (AR 10-13.)  Therefore, the ALJ's decision became the final decision of the

26  Commissioner.  20 C.F.R. § 404.981.

27

28                                   9

1   **E.    Plaintiff's Appeal**

2          On August 31, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's

3   decision.  Plaintiff contends that the ALJ failed to (1) translate the limitations assessed by Dr. Larsen

4   into comparable Social Security terminology and (2) provide any reason to reject the third-party

5   evidence provided by Rebecca Gray and Tina Bush.

6                                    **SCOPE OF REVIEW**

7          The ALJ's decision denying benefits "will be disturbed only if that decision is not supported

8   by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

9   1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that

10  of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must

11  determine whether the Commissioner applied the proper legal standards and whether substantial

12  evidence exists in the record to support the Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d

13  909, 911 (9th Cir. 2007).

14         "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v.*

15  *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such

16  relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

17  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305

18  U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the

19  evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may

20  not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*,

21  504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

22                                       **REVIEW**

23         An individual is considered disabled for purposes of disability benefits if he or she is unable

24  to engage in any substantial, gainful activity by reason of any medically determinable physical or

25  mental impairment that can be expected to result in death or that has lasted, or can be expected to

26  last, for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A),

27

28                                          10

1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  *Id.* §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform her past work.  *Id.* §§ 404.1520(f), 416.920(f).  If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy.  *Id.* §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

A.   **The ALJ's Evaluation of Medical Opinions**

1.   **Dr. Larsen**

Plaintiff maintains that the ALJ failed to translate into comparable Social Security terminology the limitations assessed by Dr. Larsen, the agreed psychiatrist in Plaintiff's worker's

compensation case.  Plaintiff asserts that the ALJ must "translate" terms of art contained in worker's compensation opinions to accurately assess those opinions for a disability determination.  As Plaintiff admits, however, an ALJ's decision need not contain an explicit "translation," but should at least indicate that the ALJ recognized the differences between the worker's compensation scheme and the Social Security scheme, and took those differences into account in evaluating the medical evidence.  *Macri*, 93 F.3d at 544; *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988); *Mejia-Raigoza v. Astrue*, No. 1:09cv0441 DLB, 2010 WL 1797245, at *8 (E.D. Cal. May 3, 2010); *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1106 (C.D. Cal. 2002).

Here, there is no indication that the ALJ failed to recognize that a distinction exists between the worker's compensation scheme and the Social Security scheme.  In discussing Dr. Larsen's opinion, the ALJ noted that he examined Plaintiff as a worker's compensation agreed medical examiner.  (AR 28, 31, 34.)  In formulating Plaintiff's RFC, the ALJ concluded that Plaintiff was mentally limited to simple, repetitive work and that after September 25, 2003, his ability to maintain attention, concentration, and an appropriate work pace was no longer poor.  (AR 26-27, 34-35.) Plaintiff does not explain how the resulting RFC assessment is an incorrect "translation" of the limitations assessed by Dr. Larsen.  Further, opinions regarding degrees of disability peculiar to worker's compensation are not conclusive in a Social Security case.  *Macri*, 93 F.3d at 544 (citing *Desrosiers*, 846 F.2d at 576); 20 C.F.R. § 404.1504.  Accordingly, Plaintiff's argument in this regard is unavailing.

### 2.    Dr. Hilliard

Plaintiff also maintains in passing that the ALJ failed to provide any reason to reject the moderate mental limitations assessed by Dr. Hilliard, the state agency psychiatrist, on September 16, 2003.  (AR 469-70.)  As Defendant points out, however, the ALJ found that Dr. Hilliard's assessment was consistent with the opinion of the consultative psychologist Dr. Lewis-Wintrode for the period before September 26, 2003, when Plaintiff had a poor ability to maintain attention,

1  concentration, and an appropriate work pace. (AR 29.) The ALJ appropriately credited the opinions

2  of Drs. Hilliard and Larsen for the relevant time periods at issue.

3       **3.     Dr. Musacco**

4       Finally, Plaintiff asserts that the ALJ improperly rejected the opinion of psychological

5  consultative examiner Dr. Musacco, which was based on Plaintiff's self-reporting. Plaintiff has not,

6  however, contested the ALJ's adverse credibility finding.  Accordingly, contrary to Plaintiff's

7  assertion, the ALJ appropriately afforded "little evidentiary weight" to Dr. Musacco's opinion

8  because it was "tainted by [Plaintiff's] lack of credibility" (AR 33). *See Bray v. Comm'r of Soc. Sec.*

9  *Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("As the ALJ determined that [the claimant's]

10  description of her limitations was not entirely credible, it is reasonable to discount a physician's

11  prescription that was based on those less than credible statements."); *Morgan v. Comm'r of Soc. Sec.*

12  *Admin.*, 169 F.3d 595, 602 (9th Cir. 1999).

13  **B.    The ALJ's Evaluation of Third-Party Evidence**

14       Plaintiff next contends that the ALJ improperly failed to discuss the lay witness statements

15  of Plaintiff's wife and daughter-in-law, warranting reversal.

16       An ALJ is often obligated to discuss and assess third-party testimony.  *See Valentine v.*

17  *Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("When an ALJ discounts the testimony

18  of lay witnesses, 'he [or she] must give reasons that are germane to each witness.'" (quoting *Dodrill*

19  *v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) (alteration in original))).  The same rule does not

20  necessarily apply to all written evidence provided by third parties, however, and "the ALJ does not

21  need to discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012

22  (9th Cir. 2003) (internal quotation marks omitted).  "[W]here the ALJ's error lies in a failure to

23  properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot

24  consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully

25  crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r,*

26  *Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

27

28                                    13

1  Here, the statements of Ms. Gray and Ms. Bush were consistent with Plaintiff's own
2  allegations about his subjective limitations, including Plaintiff's pain complaints, his activities, and
3  his ability to take care of himself.  (*Compare* AR 237-44, 257-65 *with* AR 156-64, 975-88.)  The
4  ALJ, however, rejected Plaintiff's testimony, a finding which Plaintiff does not challenge.  Thus,
5  even if the ALJ erred by failing to mention Ms. Gray's and Ms. Bush's statements, any error was
6  harmless because no reasonable ALJ could have reached a different disability determination.  A
7  reasonable ALJ would have found clear and convincing reasons to reject Plaintiff's subjective
8  complaints, which would have provided germane reasons to reject the testimony of the lay witnesses
9  in this case. *See Valentine*, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear
10  and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the
11  claimant's wife's] testimony was similar to such complaints, it follows that the ALJ also gave
12  germane reasons for rejecting her testimony.").  A reversal or remand is, therefore, not warranted on
13  this basis.

14                                         **CONCLUSION**

15  Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial
16  evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court
17  DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.
18  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue,
19  Commissioner of Social Security, and against Plaintiff Steven Bush.

21  IT IS SO ORDERED.
22  **Dated:   February 23, 2011**                    **/s/ Sheila K. Oberto**
23                                          UNITED STATES MAGISTRATE JUDGE

28                                            14